UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| JACK J. BRYAN,<br><br>    Petitioner,<br><br>v.<br><br>FEDERAL BUREAU OF PRISONS, and WARDEN<br><br>    Respondents. | CIVIL NO. 10-CV-4359 (SRN/TNL)<br><br>**REPORT<br>&<br>RECOMMENDATION** |

Jack J. Bryan, #75523-011, Rochester Federal Medical Center, P.O. Box 4000, Rochester, MN 55903, pro se Petitioner;

Ana H. Voss and Gregory G Brooker, Assistant United States Attorneys, United States Attorney's Office, 300 S 4th Street, Suite 600, Minneapolis, MN 55415, for Respondents.

## I. INTRODUCTION

This matter is before the Court, United States Magistrate Judge Tony N. Leung, on a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 by a Person in Federal Custody. (Docket No. 1.) Petitioner Jack J. Bryan is an inmate confined at the Federal Medical Center in Rochester, Minnesota. (Docket No. 6, Decl. Kinyon ¶ 2, Nov. 15, 2010.) Petitioner is serving a sentence of 60 months of incarceration followed by three years of supervised release imposed by the United States District Court for the

Western District of Pennsylvania, following his conviction for conspiracy, in violation of 18 U.S.C. § 371.  (*Id.*)  Petitioner has a projected release date of August 2, 2012.  (*Id.*)

Petitioner brings the present Petition, claiming that the Bureau of Prisons ("BOP") incorrectly interpreted its Operations Memorandum on the Elderly Offender Home Detention Pilot Program ("Operations Memorandum") and, in so doing, has wrongly denied his application for home detention under the Elderly Offender Home Detention Program of the Second Chance Act of 2007 ("Elderly Offender Program").  Petitioner asserts that the BOP should consider not only the service of his current term of imprisonment, but also a prior ten-year sentence he completed in 2005, in determining whether he qualifies for the "greater of 10 years or 75% of the term of imprisonment to which the offender was sentenced" requirement of the Elderly Offender Program. Petitioner claims that being denied admission to the Early Offender Program has violated his due process rights and discriminated against him.

Respondent opposes the Petition, asserting that Petitioner has failed to exhaust his administrative remedies.  Alternatively, Respondent asserts that Petitioner is ineligible for the Elderly Offender Program because he has not served the greater of ten years or 75% of the term of imprisonment to which he is currently sentenced.

Petitioner subsequently moved to amend his Petition to include an allegation that, had he exhausted his administrative remedies, the Elderly Offender Program would have expired, and that he is entitled to at least six months home confinement due to the fact that the BOP lost his prosthetic leg. (Docket No. 11.)

The action has been referred to the undersigned magistrate judge for a report and recommendation to the District Court under 28 U.S.C. § 636 and D. Minn. LR 72.2(b). For the reasons stated below, **IT IS HEREBY RECOMMENDED** that Petitioner's Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 by a Person in Federal Custody (Docket No. 1) be **DENIED**; that Petitioner's Motion to Amend (Docket No. 11) be **DENIED**; and this action be **DISMISSED**.[1]

## II. BACKGROUND

### A. Elderly Offender Program

The Second Chance Act of 2007: Community Safety Through Recidivism Prevention ("Second Chance Act of 2007"), Pub. L. 110-199, Apr. 9, 2008, 122 Stat. 657, modified the BOP's authority, pursuant to 18 U.S.C. § 3624(c), for designating prisoners who are nearing the end of the term of imprisonment to Residential Reentry Centers, or halfway houses. 42 U.S.C. § 17541(g)(1)(C). As amended, § 3624(c)(1) provides:

> The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.

18 U.S.C. § 3624(c)(1).

---

[1] The Court need not address the issue of appealability because Plaintiff is a federal prisoner filing a petition under § 2241, and the Antiterrorism and Effective Death Penalty Act's certificate of appealability requirement does not apply to him. *Langella v. Anderson*, 612 F.3d 938, 939 n.2 (8th Cir. 2010).

Included in the reentry initiatives was a direction to the Attorney General to "conduct a pilot program to determine the effectiveness of removing *eligible elderly offenders* from a Bureau of Prisons facility and placing such offenders on home detention until the expiration of the prison term to which the offender was sentenced." 42 U.S.C. § 17541 (g)(1)(A) (emphasis added).  In relevant part, 42 U.S.C. § 17541(g)(1)(A) provides:

> The term 'eligible elderly offender' means an offender in the custody of the Bureau of Prisons—
> (i) who is not less than 65 years of age;
> (ii) who is serving a term of imprisonment that is not life imprisonment based on conviction for an offense or offenses that do not include any crime of violence (as defined in section 16 of Title 18), sex offense (as defined in section 16911(5) of this title), offense described in section 2332b(g)(5)(B) of Title 18, or offense under chapter 37 of Title 18, and *has served the greater of 10 years or 75 percent of the term of imprisonment to which the offender was sentenced. . . .*

(emphasis added).

As directed by § 17541(g)(3), this Elderly Offender Program was to be "carried out during fiscal years 2009 and 2010."  On February 5, 2009, the BOP issued an Operations Memorandum in order to provide guidance to BOP staff for administering the Elderly Offender Program. (*See* Docket No. 1, Ex. A, Operations Memorandum, Elderly Offender Home Detention Pilot Program.)  The Elderly Offender Program was implemented at all BOP facilities and authorized to run from October 1, 2008 through September 30, 2010. (*Id.*, Ex. A, at A-1.)  The Operations Memorandum provides that

inmates who are 65 years old or older at anytime before September 30, 2010, meet the age criterion. (*Id.*, Ex. A, at A-4.)

### B. Petitioner's Claim

Petitioner is 72 years old. (Docket No. 6, Kinyon Decl., Attach. 1, Public Information Data, at 1.) He is currently serving a 60-month sentence. (Kinyon Decl. ¶ 3, Attach. 1, Public Information Data, at 3.) Petitioner's sentence began on January 26, 2009, and he received 306 days of prior custody credit. (*Id.*) His projected release date is August 2, 2012. (*Id.*) Petitioner has served approximately 53 percent of his current sentence. (*See* Kinyon Decl. ¶ 3, Ex. F, Response to Inmate Request to Staff Member.) Petitioner's request to be considered for the Elderly Offender Program was denied because (1) petitioner received a 60-month sentence and, therefore, cannot serve 10 years or more of his sentence; and (2) he had not served 75 percent of his sentence. (*See* Docket No. 6, Kinyon Decl. ¶ 3, Ex. E, at E-2, Elderly Offender Home Detention Eligibility Review, Ex. F, Response to Inmate Request to Staff Member.) In short, Petitioner was denied because he did not meet the eligibility requirements provided in § 17541 (g)(1)(A)(ii) of the Second Chance Act. *See* 42 U.S.C. § 17541 (g)(1)(A)(ii).

In the instant case, Petitioner did not submit any formal requests for an administrative review of the denial. (*See* Kinyon Decl. ¶ 4, Attach. 3, Administrative Remedy Data.) Instead of following the administrative remedy procedure provided in 28 C.F.R. §§ 542.13-.14, Petitioner skipped ahead two steps and, on November 3, 2009, he wrote directly to the Regional Office of the BOP requesting that they reconsider Petitioner's request. (Docket No. 1, Petitioner's Motion, Ex. D, Letter to Regional Office

of BOP.) It appears the Regional Office did not respond to Petitioner's letter.[2] Then, in October of 2010, Petitioner abandoned the administrative remedy procedure entirely and filed this petition for habeas corpus in federal court.

### III.     ANALYSIS

#### A. Appropriate Parties

The Warden at FMC Rochester, B.R. Jett, is the only proper respondent in this habeas matter. *See* 28 U.S.C. §§ 2242, 2243; *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004); *United States v. Chappel*, 208 F.3d 1069, 1070 (8th Cir. 2000). As such, this Court recommends that all other respondents should be dismissed.

#### B. Exhaustion of Administrative Remedies

Respondent first argues that the Petition should be dismissed because Petitioner has not exhausted his administrative remedies. It is undisputed that Petitioner did not pursue proper administrative resolution of this issue. (*See* Docket No. 6, Kinyon Decl. ¶ 4, Attach. 3, Administrative Remedy Data.) Petitioner, however, argues that he should be excused from complying with the exhaustion requirement on grounds of futility because had he followed the administrative remedy procedure, the program would have expired. (*See* Docket No. 11, Petitioner's Motion to Amend, at 1.) For the reasons set forth below, this Court concludes that Petitioner failed to exhaust his administrative remedies.

---

[2] Eight months later, on July 19, 2010, Petitioner sent a letter to prison staff, requesting that he be reconsidered for participation in the Elderly Offender Program (Docket No. 1, Petitioner's Motion, Ex. B, Inmate Request to Staff.). Prison staff took only one day to respond with a denial of his request. (Docket No. 1, Petitioner's Motion, Ex. F, Response to Inmate Request to Staff Member.) There is no evidence that Petitioner attempted to appeal that decision.

The BOP has established an administrative remedy procedure, which permits prisoners to seek formal review of issues related to any aspect of their confinement. 28 C.F.R. § 542.10(a).  First, prisoners must present their complaints to prison staff informally.  28 C.F.R. § 542.13.  If unsuccessful, prisoners may file formal administrative remedy requests, generally with the wardens of the facilities where they are incarcerated. *See id.* § 542.14.  If prisoners are dissatisfied with the warden's response, they may file an appeal with the appropriate regional director.  *See id.* § 542.15.  Finally, if prisoners are dissatisfied with the responses of the regional directors, they may file an appeal with the central office.  *See id.*  A prisoner has not exhausted administrative remedies until a response is received from the central office, unless the central office exceeds the time allotted for its reply.  *Id.* §§ 542.15, 542.18.

The requirement that prisoners exhaust administrative remedies before seeking federal habeas corpus relief is essential to effective prison and judicial administration. *Mason v. Ciccone*, 531 F.2d 867, 869 (8th Cir. 1976); *see also Willis v. Ciccone*, 506 F.2d 1011, 1015 (8th Cir. 1974).  In determining whether a federal prisoner should be required to exhaust his administrative remedies, courts must "balance the interests of the individual in retaining prompt access to a federal forum against countervailing institutional interests favoring exhaustion." *McCarthy v. Madigan*, 503 U.S. 140, 146 (1992).  The exhaustion requirement is vital because it protects administrative agency authority and promotes efficiency in adjudicating claims.  *See Woodford v. Ngo*, 548 U.S. 81, 89 (2006); *McCarthy*, 503 U.S. at 145.  As such, courts typically require federal prisoners to exhaust all available administrative remedies before seeking federal habeas

corpus relief under 28 U.S.C. § 2241. S*ee e.g.*, *McCarthy*, 503 U.S. at 144 (requiring the exhaustion of administrative remedies even though the administrative apparatus could not award the relief sought); *United States v. Chappel*, 208 F.3d 1069, 1069-70 (8th Cir. 2000) (per curiam) (holding that a federal prisoner must exhaust his administrative remedies by first presenting his claim to the BOP prior to seeking habeas corpus relief); *Kendrick v. Carlson*, 995 F.2d 1440, 1447 (8th Cir. 1993) ("Federal prisoners seeking jail-time credit . . . must exhaust administrative remedies before seeking habeas corpus relief."); *Leighnor v. Turner*, 884 F.2d 385, 387-88 (8th Cir. 1989) (finding a federal prisoner's challenge to the Parole Commission's decision premature due to prisoner's failure to exhaust his administrative remedies by appealing to National Appeals Board).

The Elderly Offender Program expired on September 30, 2010. (Docket No. 1, Ex. A, Operations Memorandum, Early Offender Home Detention Pilot Program, at A-1.) When Petitioner's request for participation in the Elderly Offender Program was denied in October 2009 (Docket No. 6, Kinyon Decl. ¶ 3, Ex. E, at E-2.), Petitioner was entitled to begin the administrative remedy procedure by first presenting his complaint to prison staff informally. 28 C.F.R. § 542.13. The deadline for completion of an informal resolution and submission of a formal written Administrative Remedy Request is 20 calendar days following the date on which the basis for the Request occurred. *Id.* § 542.14. Upon filing, the Warden has 20 calendar days to respond. *Id.* § 542.18. Had Petitioner sought informal resolution, appealed to the Warden, and been unsatisfied with the Warden's response, he would have been entitled to submit an appeal to the appropriate Regional Director within 20 calendar days of the date the Warden signed the

response. *Id.* § 542.15. The Regional Director would have then had 30 calendar days to respond. *Id.* § 542.18. Had Petitioner been unsatisfied with the Regional Director's response, he would have been entitled to submit an appeal to the General Counsel within 30 calendar days of the date the Regional Director signed the response. *Id.* § 542.15. The General Counsel would have then had 40 calendar days to respond. *Id.* § 542.18. In sum, had Petitioner followed the administrative remedies available, the entire process would have taken roughly 160 days, and would have been completed around February of 2010, long before the program expired in September of 2010. For these reasons, this Court concludes that the administrative remedy procedure in this case was not futile; therefore, Petitioner failed to exhaust his administrative remedies prior to initiating the present action.

### C. Eligibility for the Elderly Offender Program

Even if Petitioner were excused from the exhaustion requirement, his Petition would be denied because it fails on the merits. Petitioner argues that he should be allowed to enter into the Elderly Offender Program because he meets the eligibility requirements for entering the Program under the Second Chance Act. (*See* Docket No. 1, Petition, at 2.) This Court disagrees.

The relevant language of § 17541(g) states that an eligible prisoner is one who has "served the greater of *10 years* or *75 percent* of the term of imprisonment to which the offender was sentenced." 42 U.S.C. § 17541(g)(5)(A)(ii) (emphasis added). The BOP interpreted § 17541(g)(5)(A)(ii) and concluded that "[i]f the inmate has not served at least 10 years of the term in effect, s/he is not eligible to participate [in the Elderly

Offender Program]."  (Docket No. 1, Ex. A-4, Operations Memorandum, at ¶b(2).) Furthermore, the BOP concluded as follows: "Multiple terms of imprisonment (either concurrent or consecutive) are aggregated to determine the term in effect. . . . This [calculation also] takes into account prior custody sentence credit (18 U.S.C. § 3585(b)) and time spent in service of the sentence after commencement.  Inoperative time does not count toward calculation of the service of sentence." *Id.*

Here, Petitioner received a 60-month (five year) term of imprisonment.  (Kinyon Decl., Attach. 1, Public Information Data, at 1.)  Therefore, because Petitioner's sentence was less than ten years, it is impossible for Petitioner to meet the ten-year requirement. Because Petitioner fails to meet the statutory requirements necessary to participate in the Elderly Offender Program, his Petition should be dismissed.

In arguing that he has met the ten-year statutory requirement, Petitioner seems to assert that § 17541's "term of imprisonment" should include not only a prisoner's current sentence, but also prior terms of imprisonment.  (*See* Docket No. 1, Petition, at 2-3.) Using this interpretation, Petitioner argues that his prior ten-year sentence (completed in 2005) should be included in the "term of imprisonment" calculation. *See id.*

This Court concludes that § 17541's "term of imprisonment to which the offender was sentenced" unambiguously refers to the current term of imprisonment and not to prior terms of imprisonment that are not concurrent or consecutive with the current term and are not included in the custody credit calculation for the current term.  In reviewing the BOP's construction of a statute, this court first considers "whether Congress has directly spoken to the precise question at issue." *Chevron U.S.A. v. Natural Res. Def.*

*Council*, 467 U.S. 837, 842 (1984). Congress unambiguously used the phrase "to which the offender was sentenced" to modify "term of imprisonment." With this modification clause, "term of imprisonment" unmistakably refers to the current term imposed by the sentencing court, not prior terms of imprisonment. This Court's interpretation is consistent with at least three other federal courts. *See Izzo v. Wiley*, 620 F.3d 1257, 1260 (10th Cir. 2010) (holding that the phrase "term of imprisonment to which the offender was sentenced" unambiguously referred to the term imposed by the sentencing court, without any consideration of good time credit); *Mathison v. Davis*, 398 Fed. Appx. 344, 346 (10th Cir. Oct. 12, 2010) ("[T]he plain language of the phrase 'term of imprisonment to which the offender was sentenced' in § 17541 unambiguously refers to the term imposed by the sentencing court, without consideration of later diminution by good time credit."); *Mangiardi v. Fed. Bureau of Prisons*, No. 4:09-1602, 2009 WL 4544747, at *6 (M.D. Pa. Nov. 30, 2009) ("The phrase 'term of imprisonment to which the offender was sentenced' unambiguously refers to the term imposed by the sentencing court.").

Section 17541(g)(5)(C) further supports this interpretation. Section 17541(g)(5)(C) provides that "[t]he term 'term of imprisonment' includes multiple terms of imprisonment ordered to run consecutively or concurrently, which shall be treated as a single, aggregate term of imprisonment for purposes of this section." 42 U.S.C. § 17541(g)(5)(C). Thus, "term of imprisonment" excludes terms of imprisonment that have already been served.

Petitioner asserts that his prior, ten-year sentence should be included in the calculation of his current "term of imprisonment." But this prior sentence was not served

consecutively or concurrently with Petitioner's current sentence. Since Petitioner's prior, ten-year sentence was not served consecutively or concurrently with his current sentence, Petitioner's prior sentence cannot be included in the calculation of his current "term of imprisonment." Thus, even if Petitioner had exhausted his administrative remedies, Petitioner cannot show that he meets the eligibility requirements for the Early Offender Program.

### D.  Petitioner's Motion to Amend

Finally, Petitioner moves to amend his complaint to include an assertion that he is entitled to at least six months of home confinement due to the fact that the BOP lost Petitioner's prosthesis and failed to replace it. (*See* Docket No. 11.)  "There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." *Greenholtz v. Inmates of Nebraska Penal and Correctional Complex*, 442 U.S. 1, 7 (1979); *see also Egan v. Hawk*, 983 F. Supp. 858, 864 (D. Minn. 1997).  Also, the Court is limited in its authority to modify a previously imposed sentence. *See* 18 U.S.C. § 3582(c).  A court may not modify a term of imprisonment once it has been imposed unless (1) the Court receives a motion by the Director of the BOP indicating that there are extraordinary and compelling reasons to do so and that reduction is consistent with applicable policy statements issued by the Sentencing Commission; (2) there has been a mathematical, technical, or other clear error identified in the previously imposed sentence pursuant to Federal Rule of Criminal Procedure 35(a); or (3) the prisoner was sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission

pursuant to 28 U.S.C. 994(o). *See id.* None of these exceptions is applicable in the instant case. Because Petitioner is not entitled to the relief he seeks, this Court recommends his motion to amend be denied as futile.

## IV. RECOMMENDATION

Based upon the record and memoranda of counsel and Petitioner, **IT IS HEREBY RECOMMENDED**:

1. Petitioner's Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 by a Person in Federal Custody (Docket No. 1) be **DENIED**;

2. That Petitioner's Motion to Amend (Docket No. 11) be **DENIED**;

3. This action be **DISMISSED**;

4. The Clerk of Court be directed to enter judgment accordingly.

Dated: February 24, 2012

                *s/ Tony N. Leung*
Magistrate Judge Tony N. Leung
United States District Court

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court and by serving upon all parties written objections that specifically identify the portions of the Report to which objections are made and the basis of each objection. This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals. Written objections must be filed with the Court before **March 12, 2012**.